Boom 72089, Process Enhance Corporation v. Texas Insurance, north Terena Corporation allied The fundamental error in the decision below, and in the arguments of Applebee's in this case, is a failure to read the terms of the brand and patent as a person of ordinary skill in the art would read those claim terms in the context of the limitations in which they appear. This is an issue that cuts across three of the four issues that are present on this appeal. The final issue, the mixing of statutory classes, involves a simple fundamental error of law. All of the technology issues involve claim construction. And there are a lot of claim construction rules, but a common thread runs through virtually every decision of this court. And that is that claims have to be construed in light of a person skilled in the art in the context of the claims in which they appear. And this doctrine couldn't be more important here because Michael Branigan, the inventor, is a microprocessor design engineer. And what he did in this patent, fundamentally, was to use technical terms in a way that a skilled microprocessor engineer would use those terms in the field. The question is, what's the meaning of pipeline stage? And in this claim litigation, the word condition code there is used to describe the result of the error function, right? That's correct. And you agree that there is a common meaning of pipeline stage that means a clock cycle, right? We agree that that is one of two meanings. Everybody agrees that there are two meanings of stage. One is a positional sense, a position in a pipeline, and another is a complete clock cycle. But the common meaning, when it's not the specification here, is clock cycle, right? I would say that if you look at computer design 101 in a course dealing with pipelining, you will find the clock cycle discussed. In the same text, you will also see stage referred to as a position. Pipeline stage. Pipeline stage. You will see the term stage referred to as a position, as a place, as an operation. I don't see any dictionaries or printed material that suggests that pipeline stage can be the position of meaning. I'm not saying that it's not important. I'm just saying, put aside the specification. My understanding is that if you look at dictionaries, if you look at printed material, the most common definition of pipeline stage relates to clock cycle. I would agree that that is probably the more common in basic materials. But you can find articles, and we've cited articles, in which the term stage is used to mean a position and a cycle. Now, the term pipeline stage, I agree, we were not able to find. First of all, there's no dictionary definitions on any of this. And I agree that we were not able to find in the literature the two terms standing together, pipeline stage, to mean a position. We were able to find the word stage standing alone to mean a position. But in a pipeline processor... My understanding is you're saying the specification here requires a positional definition, because otherwise it would be inconsistent with some of the preferred bodies. That is absolutely correct. Particularly focused on column 21, right? In column 21 and on figures 27A and 27D, you cannot read figures 27A and 27D without accepting the fact that a condition code is fetched during the same clock cycle that it's used. There is simply no way to read this patent or these patent claims consistently with the specification unless a condition code is fetched in the same cycle that it's used. And the fundamental question here is how would a person skilled in the art understand these claims in light of the specification? And when a person skilled in the art reads these claims in light of the specification for the condition code fetching limitation, looking at figures 27A and 27D... ...to explain how this is inconsistent with the clock cycle definition of pipelines. And we can start with column 21. My understanding is you're saying that there it shows that the results of the performance here are not available until the end of cycle 2, and therefore it must be fetched during the third cycle. Is that correct? That is correct. And even the experts in this case admit that the only way that you could fetch in cycle 2 and then use the condition code in cycle 3 is if you use something called a transparent latch, which is essentially a pass-through device. It doesn't store anything. It just allows the input value to go right through to the next stage. And if you timed it just right so that when the condition code became available at the end of cycle 2, it just happened to be passed through this transparent latch at the beginning of cycle 3. That's the only possible way that it can be done. The problem with that is that there is absolutely nothing in the specification that describes the use of a transparent latch for the condition code device that holds the condition code value. And in fact, at column 68, beginning at line 60, referring to what's known as a reservation station, which is a device that can hold the condition code, and this is in the figure 27A and 27D discussion, it says that at each stage in the pipeline, including the reservation stations, must determine if the pipeline will move forward on the next clock cycle. What that tells us is that when the reservation stations are used to hold the condition code value, that it is not a transparent latch, that the condition code is stored in one cycle, and that it moves forward in the next cycle. In the case of the condition code, then, it would be necessarily fetched and used during cycle 3. Would that depend on the clock cycle? It depends on the clock cycle in that the condition code is stored, and then in the next clock cycle, it is both fetched and used, meaning that it is fetched in a position in cycle 3, and it is used in another position in cycle 3, much as we use the car assembly line analogy. In a car assembly line, in a single clock cycle, you could have a wheel assembly station, but in that single wheel assembly station, you could both put on the wheels in one position and put on the hubcaps in another position. Yes, it's all happening during the same clock cycle, before the car moves to the next assembly line station at the next time period, but two things are happening during that single cycle at different positions, in much the same way that a condition code is fetched in a position, and that it is used in another position within the same clock cycle. If you look at the claim language, it says that the condition code is fetched immediately before it is used. The fetch code only provides for the obtaining of the data during the operation. That's correct. In this case, the particular condition code. So it is fetched and used during the same clock cycle. The condition code, you're saying, is the same as the fetching code during the operation? Well, there's really no separate fetching code. There is an instruction, a code instruction, and that instruction has to be processed. And in order for that instruction to be processed in the invention, you need to use a condition code. And the condition code is calculated, as Your Honor said, from the result of a compare instruction, and it's stored. And then once it's stored, in a subsequent clock cycle, and this is the whole point of the invention is that you reduce the clock cycles, in one subsequent clock cycle, it is both fetched and it is used. In that sense, and this is consistent with the diagram at column 21 and the code at column 22, there's no intervening cycles. It is fetched and used in the same cycle. If that is the case, and that's how a person skilled in the art would understand this invention, then pipeline stage can only have a positional meaning. And we know from the prior work... Could you explain why figures 27A and 27B support you in this respect? Yes, Your Honor. Figure 27A and B is what is known as a dynamic scheduling embodiment. Now, at columns 60 and 61, it explains that you have what's called an operating unit. And the operating unit has three things. It has reservation stations for both the data that's going to be operated on, and it has a functional unit. We know that these reservation stations follow issuance of the instruction. And the specification further explains that the operating unit is a, quote, execution pipeline. So we know that the execution unit, or the operating unit, is divided into at least two clock cycles. We also know that these reservation stations, as I described, select the data that's going to be worked on, including the condition code, and it holds it, as I described in column 68, until the next clock cycle. So we have issue in one clock cycle, reservation station in the next clock cycle that holds the values. It also explains that in a third cycle, you have what's called a functional unit. And in the functional unit, we see from figure 27D that it contains both what's called the ALU, arithmetic logic unit, for performing the operation specified by the op code, and it contains the conditional execution decision logic for processing the condition code. It also says that in the figure 27D that this is a single cycle functional unit. So therefore, there are three cycles. Issue, reservation stage hold, and functional unit, single cycle, with both the conditional execution decision logic and the ALU for performing the operation specified by the op code. Whatever the problem is that I see, the problem that I see is you're standing up here, and this happens again and again on this plain construction basis. And you're explaining to us what your view is of some figures in the pattern, some languages in the pattern, which is the meaning of which is not immediately apparent to someone who's not skilled enough. And it puts a terrible burden on us. Where do you have an expert, for example, who testified that this is what these figures show? Because I don't think it's really particularly helpful for lawyers to get up and act as though we're a jury with people skilled in the art, and we should understand these diagrams, and based on the way lawyers usually decide which interpretation of these diagrams is correct. Who skilled in the art explained what these things meant? Intel's own experts explained what at least the diagram in figure 21. Is there some coherent explanation from an expert that these diagrams are inconsistent with the clock cycle interpretation of pipelines? At the summary judgment proceeding, there was no such expert testimony submitted. This was done purely, the plain construction here was done as a matter of law without expert testimony. There were declarations submitted, and evidence was submitted, for example, from Intel's experts that read the plain language the way that we think it should be read. But we don't have a coherent explanation of this from someone skilled in the art is what you're saying. Other than Intel's experts, we don't have an explanation that's correct for the figure 27A and 27B. Everything I'm saying is expressly stated in column 60 through 68 of the specification. But it's not so clearly stated because there seems to be a disagreement between the parties about it. I mean, this is stuff that can only be read and understood by someone who's expert in the field, and that's not us. And so if you want a particular plain construction, it seems to me the burden is on you to find someone skilled in the art and someone expert who could explain it in a way that could be understood. But I do submit that at least Intel's experts explained it in a way that could be understood. That evidence is part of the record in the Intel case. In our briefs, it cited Professor Ferber, and this is the testimony where he looked at column 21 and, for example, said that the best reading is that the condition code is stored in cycle 2 and that it's both fetched and used in cycle 3. And the other expert that Intel hired, the professor at Stanford University, came up with a theory that, well, if you could use a transparent latch, and Professor Ferber said the same thing, if you could use a transparent latch, then it would be possible to fetch in cycle 2 and use in cycle 3 because of the pass-through nature. But again, under the Rexner case, if you have – and I think what this comes down to is if a person skilled in the art would look at this and recognize, as Intel says, that when you fetch versus when you use is simply an implementation detail, then the claim should be construed broad enough to cover both implementations. And that construction would commend both a positional and a clock cycle construction depending on the context used. And here, in context, what the inventor did was use condition code when – I'm sorry, used just the two terms together, pipeline stage, in the fetching limitation where he intended to communicate a positional meaning. And when he intended to use the broader clock cycle meaning, in every instance, he used a modifier in front of pipeline stage, like conditional execution decision logic pipeline stage. But did Intel's expert also explain figures .7, A, B, and C? No, he did not. So there's no expert testimony about that? There is no expert testimony about that. But if I could briefly finish figures 27A and 27D, what we – what it shows, and I think that there is no reasonable dispute here regarding what these figures show, is that if you have three stages, issue, reservation station, and a single stage functional unit, and the condition code is held at the reservation station, there is nothing shown where a condition code could be held or stored for fetching between the reservation station and the single stage functional unit. The figure expressly shows that these – and the specification explains that the condition code goes from the reservation station to the functional unit in the next clock cycle. Those are words right out of the specification. So there can't be a prior clock cycle for fetching the condition code. In the same way, if you look at the definition of the first part, instruction execution pipeline stage, the first limitation of the claim requires a instruction execution pipeline stage prior to the conditional execution decision logic pipeline stage. The conditional execution decision logic is in the third stage, the single stage functional unit. That means that the prior instruction execution pipeline stage can only be the reservation station. And in the reservation station, the operation specified by the op code is not performed. It is part of the execution pipeline, as expressly said in the specification, but the operation is not performed there. Instead, the code is prepared for the operation. So the district court's instruction cannot be correct that an instruction execution pipeline stage has to perform the operation when only the reservation station stage in figures 27A and D can qualify as the prior instruction execution pipeline stage. What about figure 27E? Figure 27E is another one that helps us, particularly in connection with the... I don't know about that. There's a claim in the diagram that it's the reservation station 47, right? I'm just wondering, there are three execution stages in 27E. Yes, there are reservation stations in what is called execution stage one. And then there is an execution stage two where additional information is collected, and then the operation is performed in execution stage three. In this case, a load or a store instruction. The reservation stations 470, are they an instruction execution pipeline stage? No, they're not. The reservation stations there are not an instruction... Actually, I misspoke. Yes, the reservation stations are part of an instruction execution pipeline stage. They are part of execute stage one. Again, the operation specified by the op code is not performed there. That happens in execute stage three. So this provides a perfect example where execute stages, instruction execution pipeline stages, are expressly shown that do not perform the operation specified by the op code. Intel says, well, they perform operations that are necessary for execution. And we agree. And that is perfectly consistent with the definition of instruction execution pipeline stage. But the district court erred by limiting that definition to the single, one or more stages where the actual operation is performed. But aren't you saying basically that the execution stage three is the one that does all the execution? Execution stage three performs the operation specified by the op code. And that's what the district courts in construction limited in instruction execution pipeline stage two. Performs the operation specified by the op code. Execution stage... That's what the specification says, isn't it? No, the specification does not say that. The specification says that the execution pipeline is an instruction execution pipeline stage. One of those stages will always perform the operation specified by the op code. The operation specified by the op code may even be performed in more than one execution stage. But there are other instruction execution pipeline stages that are necessary to perform in the operation that prepare the instruction for execution. Namely execution stage one and execution stage two in figure 27E that do not perform the operation specified by the op code. If you limit instruction execution pipeline stage to only the stages that actually perform the operation specified by the op code as the district court did, you read figure 27E out of the specification, out of the points. But the amendments that were made to the claims before the issue was claim one, some of those changes really restrict your definition. You mean during the prosecution history? During the prosecution history. During the prosecution history there was one change made that's relevant here. The applicant to overcome an ambiguity objection substituted one word. Stage for position. And the experts agree that stage and position mean the same thing. And it's undisputed that making that single change was unnecessary to overcome fight or any other prior art. Those prior art references simply don't deal with where a condition code is fetched relative to its use. If anything, we think that that shows that the inventor intended a positional understanding when he uses the term pipeline stage without a modifier. Well, but the change that was made was from adding pipeline position as preceding the conditional execution of precision logic to at the pipeline stage immediately preceding the conditional execution of precision logic pipeline stage. What does that mean? What it means is that, first of all, the term pipeline was always there. So in the first clause, the term stage was substituted for the term position. And again, we think that those two terms mean the same thing. But it's all in the same clause. It's all in the same clause. In the second clause, it's kind of interesting. He made that change for claim one but not for claim seven in putting the conditional execution decision logic pipeline stage. That does not appear in claim seven. But that was simply part of a clarifying to indicate that the condition code is fetched at a position immediately before it's used in a stage in this time period which he labels conditional execution decision logic pipeline stage. It's a perfect example of using the term pipeline stage standing alone to indicate position and using the term with a modifier, conditional execution decision logic pipeline stage to indicate a time period within the same clause. It's not a time period. That point's a location. Because you're locating it prior to the writing stage. You have to have a comparison prior to the writing stage. You have to have a comparison prior to the writing stage. So, again, when he used the term pipeline stage, it communicates a position within a clock cycle. And when he uses the term conditional execution decision logic pipeline stage, he's talking about a cycle in which some operation happens in this case. You have to have a final stage at that point before the writing cycle is executed. And before you can execute the writing cycle, you have to have a comparative of the two, right? You have to have the comparison of the two. It doesn't necessarily have to be the last stage before writing. There's nothing in the claims that says that the conditional execution decision logic pipeline stage can't be located during the same clock cycle as, for example, where the operation specified by the opcode occurs. And, in fact, if you look at figure 27D, you see that the logic for both are in the exact same single stage functional unit. It's one stage, one clock cycle in 27D. In 27D, you see the box labeled ALU in the middle of the page. And you see the box labeled conditional execution decision. The specification unambiguously says that this is a single stage functional unit, single clock cycle. And the logic where it says that in the specification is at column 70, line 36. Can you give me one? Can you summarize briefly where the trial court went wrong on this particular issue? That is, what was the evidence to set your judgment to say that the court didn't take testimony, although there were expert depositions? There were expert declarations submitted with the motions. There were declarations that there was no deposition of the experts in advance? There were depositions. Deposition testimony was submitted as well, Your Honor. And I think where the district court quite simply erred was in not giving any weight to our position or our argument that the term stage has a positional meaning, one. And second, not construing these claim terms in the context of the limitations in which they appear. The district court never answered the question that has to be answered in this case. And that is, would a person skilled in the art, reading this patent, understand or believe that a condition code has to be fetched and used in different clock cycles? Well, that is the question. Who is a person skilled in the art? You just told me ten minutes ago that there isn't any person skilled in the art to address that question. We're not skilled in the art. You're not skilled in the art. You're here as a lawyer. How are we supposed to know? You know, Your Honor, that's a very interesting question because the Supreme Court has told us that claim construction is a matter of law. And this court has repeatedly emphasized that such extrinsic evidence is the least valuable in answering these questions. We think that there was. In fact, we were criticized for starting with the extrinsic evidence in this case to simply prove one point. And that is that in the art, these terms are reasonably susceptible to more than one meaning. And then the question, and from this court's precedence, what we're told over and over is go to the specification and then determine how the terms should be construed. The problem with specification often in these cases, and this comes up again and again, is not something that's so clear, you know, that only a person skilled in the art at times can understand the specification. That may be one of these cases. The problem is we don't have someone skilled in the art explaining the specification. We're not going to be able to solve this universal question here. Sir, we understand specifications are written for the exchange between the applicant and the examiner. They're not written for their judges. But here we are. Let's hear from the other side. If I could just respond briefly to the last point, I would submit that when a specification is reasonably susceptible to more than one meaning, as it may be here, the construction that should encompass both should apply, and that's the Rex Merkins. I have one further question. If we agree with the trial judge in the definition of pipeline stage, does that mean that there's no infringement? If a positional definition of pipeline stage does not apply and we are limited to a definition that requires that the condition code be fetched in a different clock cycle than it's used, then yes, there's no infringement. If it can be fetched in the same cycle that it's used, there is infringement. We'll stay here if I may. Thank you very much. It's appreciated. It does seem, doesn't it, that to the extent that there were expert viewpoints expressed, that they didn't have that which we were just hearing about, is that an illicit infiltration? I don't believe that would be a fair characterization, Your Honor. I think the expert viewpoints, and there were none in the Texas Instruments case on our record. In the Intel case, there was some additional expert testimony adduced. To the extent the court considers it, what the substance of that testimony is is that persons of skill in the art understood that the figures in the patent would support either method of implementation. You could fetch in the preceding cycle and use it in the following cycle, or you could fetch it and use it in the subsequent cycle. That's the best you could take away from the expert evidence in the Intel case. Thus, there's no reason to depart from what's the conceded conventional meaning of pipeline stage. My opponent acknowledged there is no evidence that the term pipeline stage as a phrase is ever used in the art to denote anything other than a clock cycle bounded traditional pipeline stage. I don't think that's quite fair. I don't think that's quite fair. He says that there are references to the use of the word stage, which is a definitional meaning, and he suggests that stage, pipeline stage, should be the same thing. He does seem to concede that the most common meaning of pipeline stage relates to a clock cycle. I would agree, Your Honor, that stage and pipeline stage have the potential to mean different things. The claim, of course, only uses the phrase pipeline stage, which is a term of art phrase. So it's the difference, say, between dry ice on the one hand and ice on the other hand. They're very different things when you use the term of art phrase. Pipeline stage is a term of art phrase further that the applicant in the original specification chose to describe in the conventional manner. There's absolutely nothing in the patent, its prosecution history, that would give a person with a skill in the art any clue that pipeline stage was taking on anything other than its ordinary and conventional meaning, which is exactly the meaning that the district court gave to it in claim construction. So while it's possible that the word stage might have an alternate meaning or a broader meaning, that's not the phrase in the claim. In fact, that's what the claim said before it was amended to read pipeline stage. There's nothing in this patent that would suggest that a pipeline stage is anything other than the conventional meaning. The only argument that's advanced to suggest the contrary result is built on this house of cards that you can somehow infer from figures that don't speak to this issue that a particular meaning is required by the claims. But there's no evidence from any expert or any other record evidence to suggest that in the TI case. And the only record evidence in the Intel case, which we would submit ought not be considered, but to the extent that it is, all that suggests is that a person with skill in the art could see that it could be implemented either way based on what's disclosed in the patent. So that also doesn't drive an outcome that would suggest that you should move away from the ordinary meaning recognized not only in the extrinsic evidence, but more significantly by the applicant in the original specification and in the intrinsic evidence in the form of prior art references like fight that are cited during prosecution that use the term exactly that way. So how would you differentiate between the pipeline stage being a positional definition and a clock definition, the standard clock definition? What is the difference? And why is it critical? I don't believe there is such a thing as a positional definition of pipeline stage. I don't believe that is in any way an art recognized definition of that term. Pipeline stage, in fact, the district court found that there are two characteristics of pipeline stage. And I think it's an important point to note that the district court not only found that in order to qualify as a pipeline stage, a structure has to work for a regular interval of time defined by the system clock, but also that separate pipeline stages have to be capable of simultaneously working on different instructions. Because that parallelism is really the essence of a pipeline. It's like an assembly line. I note in reply that applicants concede that the second half, excuse me, MEC concedes that the second half of that construction is without error. Page 12 of their reply brief, they acknowledge that's why they didn't address it. Just taking that second portion of the construction alone is independent grounds to affirm the district court's summary judgment of non-infringement. Let me explain why. The claim requires two pipeline stages. The conditional execution decision logic pipeline stage and the one preceding it. MEC says we can find both of those in a segment of the stage of the PCI processor called E1. The district court found, although, that it was undisputed, however, that those two acute structures are not capable of simultaneously working on different instructions. They always work on the same instruction. Sequential? Does E1 have to be sequenced at E2? E1 and E2 are separate stages. What MEC contends is that they can break the E1 stage into parts and find the two positions that they would use to re-control. Well, within E1. But what the district court found is that those two positions within E1 are always working on the same instruction. At page A53, Chief Judge Stotler's Statement of Uncontroverted Facts and Conclusions of Law, A53 in the record, she noted, and I'm quoting, at any given time, the structure in E1 that plaintiffs identify as allegedly fetching the condition code and the structure that plaintiffs allege constitute the conditional execution decision logic, so those are the two positions, are both involved in processing the same instruction. That was a determination of undisputed fact. It was not challenged by MEC on this appeal. If you take the concededly correct aspect for construction, which is that separate pipeline stages are capable of simultaneously working on different instructions, and her finding that the two accused so-called stages that are really positions are always working on the same instruction in the accused product, as a matter of law, there can be no infringement. You've got a concededly correct plain construction, even irrespective of what the court concludes with respect to the meaning of pipeline stages as far as clock cycles go. MEC acknowledges that at least pipeline stages have to be capable of working on separate instructions simultaneously. The district judge found that it's undisputed that the pipeline stage, the so-called pipeline stages that are accused in the accused product, are capable not of working on separate instructions, but are always, at any given time, working on the same instructions. So they don't qualify as separate pipeline stages. Without the two pipeline stages, you can't satisfy that limitation that requires fetching in the pipeline stage immediately preceding the conditional execution decision logic, and it really doesn't matter whether those are clock cycle bounded or not. I'm in no way suggesting the district court was in any way incorrect in her clock cycle aspect of her construction, but simply that the two halves of the construction are two independent properties that a pipeline stage has to have, and effectively MEC's acknowledged it does not have, and there's certainly no evidence that it has, the second characteristic, and thus no basis on which to overturn. The second characteristic being the ability to work on two sets of instructions at once. For two pipeline stages to be working on two different instructions at the same time. If you think back to the assembly line... A single pipeline stage does not work on two things at the same time. They concede the district court was correct in defining the pipeline stage with reference to what the other pipeline stages do. I don't believe that issue came up, but while I'm not suggesting... Yes. What MEC acknowledged is that the district court did not err when it concluded that in order to qualify as a pipeline stage, the way you tell the difference between pipeline stages is by looking at what they do. And one of their key hallmarks is that a given pipeline stage is working on one instruction, while a separate pipeline stage is working on a different instruction. So we gave, for example, the analogy in our papers to doing laundry. The washing machine is one pipeline stage. The dryer is a separate pipeline stage. The folding is a third. The reason that you can't subdivide it further and say, well, the rinse cycle and the spin cycle inside the washer are also pipeline stages, is because they're always working on the same load of laundry. No new laundry enters the washing machine when you move between those two cycles. Nothing exits the pipeline. So you look at a computer pipeline similar to an assembly line or a washing machine, and what the district court concluded was that one of the things you have to have in order to label a particular structure of pipeline stage is that it has to be capable of working on one instruction, while the other pipeline stages are working on different instructions. And it's that aspect of it. So how does that not answer the question or understand what you're saying? The district court also found that the structures that MUC contends are the two pipeline stages in the accused product do not have that capability. Rather than being able to work simultaneously on different instructions, they are always working at the same time on the same instruction. So they're not two separate pipeline stages. Pipeline stages are not like that. They're always working on the same instruction. We know that because the district court found that it was undisputed that that was correct. Where does the district court say that? At page 853 in the record, item 10 in the chart of undisputed facts that the district court found were not in dispute on summary judgment. It's set out in tabular form, and then there's discussion or conclusions of law section. It's really items 6 through 10. It concludes with number 10, which is the concluding point that the structures that MUC contends would satisfy this claim. The one that supposedly fetches the condition code and the one that's the conditional execution decision logic pipeline stage at any given time, quote, are both involved in processing the same instruction. So that's 180 degrees the opposite of what... I don't understand why that's necessarily consistent with the idea that they have to be capable of working on different instructions. Why is the fact that they are capable of working on two instructions at once inconsistent with the idea that two different pipeline stages have to be capable of working on different instructions? The point is that the capacity in order to tell what's... Pipeline stages are inherently complex. They have lots of subcomponents. In order to tell what constitutes a pipeline stage, you both look at the clock cycle bounding, which is the first half of the claim construction, but you also look at what the structure does. If it's working in parallel with different structures on different instructions, one in one pipeline stage, an entirely different structure in the next, then you can tell that those are two different distinct pipeline stages. If, on the other hand, you have two structures that are really just subparts of a single pipeline stage, which is what we're talking about in the accused device, you can't break the pipeline stage down further because it loses the property that makes it a pipeline stage. So the accused subpositions that MEC points to, the district court found, and it's undisputed and not contested on this appeal, they're always working on the same instruction at the same time. Certainly no evidence that they're capable of working on... independently on different instructions, and, in fact, the district court's determination of undisputed fact, I would argue, negates that possibility, since it says at any given time they're working on the same instruction. So what it comes down to is that MEC, in order to avoid the problem with the claim, which is that it requires fetching in a preceding pipeline stage, it's really the preposition that creates all the problem there. In order to do that, they've sought a construction that strips the meaning from pipeline stage so that you can draw the boundaries arbitrarily any way you like. What the district court found is that in this art and in this patent, both as used by the patentee as well as confirmed by extrinsic and infinite sources, pipeline stage has to have those two properties. Even MEC concedes it has to have the second property, and the district court found that the accused structures don't have the properties that would make them distinct pipeline stages, putting aside the cycle part of the definition. The district court concluded that it was undisputed that those two segments, those two subportions, don't share the property that would make them the pipeline stages. They're never working on separate instructions. Is that because of the fact that the pipeline stage immediately preceding the conditional institution isn't a pipeline stage? It can't be working in parallel rather than in series? If they're two distinct pipeline stages, from the clock cycle perspective as well as from the what they're doing perspective, then they would be working in parallel. If the instructional institution pipeline stage was a true pipeline stage, which we contend is what it has to be, then it would be working on one instruction, and the next one down the line, the conditional institution, would actually be working on a separate instruction, a previous one. Think about figure 29, Your Honor, in the patent which shows the progression of the stages down the pipeline. That's how you know they're pipeline stages. Instructions move each clock cycle down the pipeline because the stages are synchronized with one another, and each pipeline stage is working at any given time on a different instruction than all the other pipeline stages. And if you try to divide the pipeline stages any further, they cease to be pipeline stages. They cease to have the properties. It's like taking a water molecule and saying, well, if I have hydrogen and oxygen, it's the same thing as water. When you break it down too small, it no longer has the properties that it's required to have to meet this plan of instruction. But why wouldn't the claims cover them in parallel? Well, the claims require that things happen in a certain sequence and that the stages have a relationship with one another. So the claims were amended, for example, to require fetching at the stage immediately preceding. So it doesn't permit it to be fetched within the same cycle, nor after the cycle. The only permissible arrangement is preceding and immediately preceding. No stages intervening. So that prevents the stages from being in parallel with the pipeline? The pipeline is... So the requirement would be to provide fetching? That's correct. The pipeline is parallel in the broadest sense that the stages are all working in parallel. But for any given instruction, in order to meet this plan, the fetching has to be in a stage, and the immediately following stage has to have, be the conditional execution decision logic pipeline stage. I'd like to address figure 27E. That was a figure that was addressed in the flypapers, and we disagree with what was stated there. My colleague, Mr. Hadley, suggested that in figure 27E, the reservation stations, elements 470, are actually part of execute stage 1. That is incorrect, and it's contradicted by the specification itself. Figure 27E is described with column 71, referring to starting at about lines 45 and running through about line 53. The specification specifically there shows that the reservation stations come before execute stage 1. So the first point is that the reservation stations 470 are not part of execute stage 1. Point number 2 of disagreement is that execute stage 1 is not performing part of the output function. That was another point that my colleague suggested, and that's incorrect as well. If you look at figure 27E... Did anybody who was an expert testify to what you're saying? No, Your Honor. The only... I'm not supposed to know what you're telling me. I can point you to some specific places in the specification with respect to this point. With respect to 27E... What if someone who's not skilled in the art can't understand that part of the specification? I believe that this particular place I'm about to take you to is understandable. Let me give it a try and see whether that isn't true. Figure 27E is a load, store, and branch unit. The specification in column 71 describes it that way. The instructions that are set out in the specification for loads, stores, and branches are described in columns 35, 36, 37, and 38. We can take any examples from those pages of loads, stores, or branches, and in each and every instance, the specification identifies the opcode, it gives a mnemonic, and then it says that the mnemonic includes calculating an address. Now that calculation takes place in Execute Stage 1 according to column 71 of the specification. Execute Stage 1 includes LSD1 address adders 405 on both sides of this functional unit. So we have there in the specification an explanation that the opcode function for a load and a store actually includes an address calculation we have here in the picture, and in the column that describes the picture, the circuitry that does that calculation in Execute Stage 1. The patent thing goes on to describe Execute Stage 2 and Execute Stage 3, which perform other pieces of the opcode function for a load instruction, a store instruction, or a branch instruction. Here is the significance of that point. Figure 27E shows an element in 1155 up at the top that an instruction is issued. It's issued into a reservation station, which column 68 of the patent describes as a pipeline stage. That reservation station is not part of an execution pipeline stage. Then... The function of a reservation station is described in column 68 and several other places. It actually obtains information. If you have a dynamic scheduling... Yes. So, for example, there are reservation stations that obtain the operands that are going to be processed for an add instruction, and there are different types of reservation stations that obtain the condition code. Below, NEC took the position that obtaining the condition code is fetching the condition code. But those reservation stations are performing that function of obtaining information. And so we have in this figure, in 27E, something that is completely consistent with an illustration of the district court's claims construction. I would point out one more thing about figure 27E. At column 73, although the conditional execution decision logic is not depicted on the figure, the column points out at 73 that the conditional execution decision activity is happening in execute stage 3. So here in figure 27E, we have a perfect illustration of what the district court was talking about, not something that's inconsistent with it. Excuse me. Do you think that this was supposed to understand that? Um... Your Honor, I believe that this case could be decided on the TI record, which included no discussion of any of this, and should be decided on the TI record. You are a court of review. There was an expert testimony that was presented in the TI case. The Intel case came later. There's a collateral estoppel issue that prevents them from taking a different position. And we agree that on the face of the record in the TI case, there is nothing that should cause this court to disagree with either Clank's construction of pipeline stage or instruction execution pipeline stage. My only reason for pointing this out is because it was a piece of information presented in the reply papers. I did not have a chance to respond to it. We believe it's completely consistent with it, not a departure from the construction. But do we need to decide both? Can we just decide one of the two Clank constructions? Yes, absolutely. The stipulation in the Intel case was specific for both Clank's construction points, and there's not infringement with respect to any of the claims that either construction is correct. Any questions? Thank you. Your Honors, I just have a couple of short points to make in reply. First, going to the question of evidence, I didn't speak. There was evidence, and evidence specifically in the TI case regarding Column 21 from the appellants, and that was Mr. Brannigan's own declaration, which appears at page 8167 through 8170 of the record. And he describes the depiction at Columns 21 and explains exactly why under those scenarios both the condition code must be fetched and used during this time clock cycle, and why the prior construction execution pipeline stage does not perform the operation specified by the op code, but instead is part of the execution pipeline and performs functions that relate to the operation specified by the op code. Second, and this is in our brief, but we think that stage and pipeline stage simply must mean the same thing in the context of a pipeline processor. Third, the court had a number of questions, and they were simply... What do you base that on? What do you base that on? Common sense. If a stage is a stage in a pipeline... If a stage exists in a pipeline processor, I don't know what you would call it other than a pipeline stage. My impression was that that particular aspect was not really disputed by those who did attend the expert discussion on technology. Your Honor, the only place it was disputed was by Intel's paid expert when they realized that if they conceded it, that they had a problem. And then they tried to wiggle out of the questioning of, well, isn't a pipeline stage the same thing as a stage in a pipeline processor? And the answers just made no sense. Was that Intel or TI? That was Intel, Your Honor. And again, for TI, we do have the testimony in there. In terms of the second portion of the claims construction of pipeline stage, there is nothing that is expressly wrong with that clause. When you have separate pipeline stages, in the positional sense, they certainly are capable of simultaneously working on different instructions at the same time. Now, if the district court's construction has said that within a given period of time, if you have two operations going on, those two operations must take place on different instructions, so that within a single cycle, you can fetch an instruction, a condition code for one instruction, but when you come to using it, it has to be for a different instruction, then we would have had a big problem with that type of a construction. But that's not what the district court said in this clause, and it is the clock cycle sense, the clock cycle aspect of the definition that presents the problem, because that alone is what precludes a condition code from being fetched and used during the same clock cycle. The final point is, and just briefly, the argument regarding the reservation stations in figure 27E, I was incorrect. It does appear that the reservation stations are not part of the execution stage one. They do, however, follow issuance, and they are plainly, as the plain language describes, part of the execution pipeline. So in terms of both constructions, it really doesn't make a difference whether the reservation stations are separate from execute stage one or part of execution stage one. The bottom line is that in both cases, they are part of the execution pipeline, and they do not perform the operations specified by the off code. And then the final point on that figure, and Your Honor, I agree that this is tough sledding, but if I could, I'd like to take 30 seconds and see if I can try to make this understandable by pointing to specific language in the specification. My colleague stated that execution stages one and two do perform the operations specified by the off code because they calculate and address. If you look at column 36, beginning at line 20, it describes the off, and this was something that my colleague referred the court to, it specifically defines what the off code is, what's contained in the off code, for a load store instruction. And if you look, there are three things, S, D, T, and Q, and all say that they load parts of the instruction. Nothing about the off code calculating part of an address. The loading part admittedly only happens in execute stage three. That's where the off code, as specifically defined in column 36, line 20, functions. And if there are no other questions, I've probably exceeded my time. Questions? Thank you. This has taken under submission. Thank you. Thank you.